ROBERT R. CROSS (State Bar No. 56814)
E-Mail:      *rcross@sideman.com*
CONSTANCE J. YU (State Bar No. 182704)
E-Mail:      *cyu@sideman.com*
ELLEN P. LIU (State Bar No. 280459)
E-Mail:      *eliu@sideman.com*
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Eighth Floor
San Francisco, California 94111-3629
Telephone:      (415) 392-1960(
Facsimile:      (415) 392-0827

Attorneys for Plaintiff
IGUAÇU, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| IGUAÇU, INC., | Case No. C 09-0380 RS (NMC) |
|---|---|
| Plaintiff, | **MEMORANDUM IN SUPPORT OF MOTION OF PLAINTIFF IGUAÇU FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| ANTONIO CABRERA MANO FILHO, | Date:      December 20, 2012 |
| Defendant. | Time:      1:30 p.m. |
| | Place:      Courtroom 3, 17th Floor |
| | Judge:      Honorable Richard Seeborg |

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3629

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  PROCEDURAL HISTORY .................................................................................. 1

III.  STATEMENT OF UNDISPUTED MATERIAL FACTS ..................................... 3

IV.  LEGAL STANDARD FOR SUMMARY JUDGMENT ...................................... 5

V.  ARGUMENT ........................................................................................................ 6

    A.  Iguaçu Is Entitled To Summary Judgment on Cabrera's Affirmative Defense and First Claim for Relief Because the Undisputed Facts Demonstrate That the Quotas Purchased by ADM Were Not Securities Under Federal Law. ............................................................................................... 6

        1.  The Limeira Quotas Purchased by ADM Were Not Securities Under Federal Law Because ADM Intended To Purchase an Active Interest in a Joint Venture. ............................................................................ 8

        2.  The Quotas in Jatai Purchased by ADM Were Not Securities Under Federal Law Because ADM Intended To Purchase an Active Interest in a Joint Venture. ........................................................................... 12

    B.  Iguaçu Is Entitled To Summary Judgment on Cabrera's Affirmative Defense and First Claim for Relief Because the Undisputed Facts Demonstrate That the Quotas Purchased by ADM Were Not Securities Under California Law. ............................................................................................. 13

        1.  The Limeira Quotas Purchased by ADM Were Not Securities Under California Law Because All Members Were Actively Engaged in Management. ............................................................................................ 15

        2.  The Jatai Quotas Purchased by ADM Were Not Securities Under California Law Because All Members Were Actively Engaged in Management. ............................................................................................ 15

VI.  CONCLUSION .................................................................................................. 16

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3629

C 09-0380 RS C 09-0380 RS (NMC)

MEMORANDUM IN SUPPORT OF MOTION OF PLAINTIFF IGUAÇU FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................................. 5

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ......................................................................................... 5, 6

*Danner v. Himmelfarb*,
    858 F.2d 515 (9th Cir. 1988)............................................................. 6, 7, 10, 13

*In re Banco Santander Securities-Optimal Litigation*,
    732 F. Supp. 2d 1305 (S.D. Fla. 2010)......................................................... 10, 13

*Keith v. Black Diamond Advisors, Inc.*,
    48 F. Supp. 2d 326 (S.D.N.Y, 1999) ....................................................... 11, 12, 13

*Moore v. Stelling*,
    52 Cal. App. 2d 766 (1942)................................................................................. 14

*Moreland v. Department of Corporations*,
    194 Cal. App. 3d 506 (1987).............................................................................. 14

*Morrison v. National Australia Bank Ltd.*,
    --U.S.---, 130 S. Ct. 2869 (2010) ..................................................................... 10

*Oil Lease Service, Inc. v. Stephenson*,
    162 Cal. App. 2d 100 (1958).............................................................................. 14

*People v. Smith*,
    215 Cal. App. 3d 230 (1989).............................................................................. 13

*People v. Woolson*,
    181 Cal. App. 2d 657 (1960).............................................................................. 14

*SEC v. W.J. Howey Co.*,
    328 U.S. 293 (1946).......................................................................................... 7, 11

*Slevin v. Pedersen Associates, Inc.*,
    540 F. Supp. 437 (S.D.N.Y. 1982)........................................................... 7, 9, 10

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*,
    809 F.2d 626 (9th Cir. 1987).............................................................................. 6

*United Housing Found., Inc. v. Forman*,
    421 U.S. 837 (1975) ........................................................................................ 6, 7

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3629

C 09-0380 RS C 09-0380 RS (NMC)

MEMORANDUM IN SUPPORT OF MOTION OF PLAINTIFF IGUAÇU FOR PARTIAL SUMMARY JUDGMENT

STATUTES

15 U.S.C. § 77b(1) .................................................................................................. 6

15 U.S.C. § 78o(a)(1) .............................................................................................. 6

Cal. Corp. Code § 25019 ............................................................................... 13, 14, 15

Cal. Corp. Code § 25210(a) ............................................................................... 13

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3629

C 09-0380 RS C 09-0380 RS (NMC)
MEMORANDUM IN SUPPORT OF MOTION OF PLAINTIFF IGUAÇU FOR PARTIAL SUMMARY JUDGMENT

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3629

## I.   INTRODUCTION

This action arises from Mr. Cabrera's breach of a written finder's agreement with Iguaçu, after Iguaçu introduced him to Archer Daniels Midland ("ADM") and ADM participated in a joint venture with him to produce and market biofuels.  ADM acquired 49% of membership interests ("quotas") in the LLC (or *Limitada*) known as Cabrera Central Energetica Acúcar e Álcool Ltda. ("CCEAA" or "Limeira") and 80% of the quotas in three other LLCs.[1]  Although ADM invested tens of millions of dollars in the joint venture, Cabrera refused to pay Iguaçu any of the finder's fees due under the agreement, necessitating the filing of this collection action.

Cabrera admits that Iguaçu introduced ADM to him and that he participated in the joint venture with ADM, but his Third Affirmative Defense asserts the finder's agreement is illegal, unenforceable, void, and voidable under California and federal law because the transactions constituted the purchase of "securities" by ADM, and Iguaçu was not a licensed securities broker. (Docket # 59, 4:21-24.)  Cabrera's Counterclaim likewise alleges that he "entered into two transactions with ADM brokered by Iguaçu, pursuant to which he and others sold securities" and that Iguaçu acted as a securities broker.  (Docket # 59, 8:14-15, 7:25-8:3.)

Iguaçu contends that the LLC interests purchased by ADM were not securities under either state or federal law, since ADM was a sophisticated investor, purchased interests giving it the right to participate in management of the LLCs, and actively participated in management and control thereafter.

## II.   PROCEDURAL HISTORY

Prior to Cabrera's appearance in the action, Iguaçu filed an *ex parte* application for a right to attach order and order for issuance for writ of attachment ("RTAO") which Judge Chen conditionally granted on May 20, 2010.  (Docket # 53.)  Cabrera thereafter appeared in the action and filed a motion to vacate the RTAO on June 30, 2012.  (Docket # 52.)  In his Report and

---

[1] Usina de Acúcar e de álcool Jataí Ltda ("Jatai"), Bela Vista Bio Etanol Participações ("Bela Vista"), Ceres Holding  Participações  Ltda. ("Ceres"), and Bacuri Agrícola Ltda. ("Bacuri"). Further details of the joint venture ownership structure are discussed below.

MEMORANDUM IN SUPPORT OF MOTION OF PLAINTIFF IGUAÇU FOR PARTIAL SUMMARY JUDGMENT

Recommendation, issued September 28, 2010, Judge Chen determined that on the record before him, Iguaçu had not met its burden of demonstrating that the interests purchased by ADM were not "securities," since Iguaçu lacked evidence that Cabrera actually participated in the management and control of the entities, rather than being a passive investor.  (Report and Recommendation 6-7, Docket # 91.)  (A copy is attached for convenience as **Exhibit A**).  While noting that under an "economic realities" analysis, a good argument could be made that the Court should look to the intended ultimate outcome of the transaction rather than the status of the interest sold at the moment of transfer, Judge Chen found no case on point and could not say at that juncture that it is "more likely than not" that Iguaçu will obtain a judgment against Cabrera. This Court adopted Judge Chen's Report and Recommendation and vacated the RTAO on November 22, 2010.  (Order Adopting Report and Recommendation, Docket # 101.)

After discovery of documents from ADM, including copies of the executed transaction agreements, Iguaçu moved for reconsideration.  (See Docket ## 142-146.)  The Court granted the request for reconsideration, but later denied Iguaçu's renewed request for an RTAO, holding that Iguaçu's new evidence did not materially change the outcome, since the critical question was whether the buyer (*i.e.* ADM) "obtained an interest that should be characterized as active rather than passive." (Order Denying Mot. for Recons. 3:15-19, Docket # 177.)  (A copy of the Order is attached for convenience as **Exhibit B**.)  However, the Court noted since the securities laws were primarily enacted to protect investors, "a good argument can be made that the crucial issue is whether the buyer obtained an essentially passive interest, regardless of what the seller's status may have been prior to the transaction."  (*Id*. at 3:1-3.)

Having completed additional discovery, including the deposition of a key ADM executive with knowledge of the transactions, Iguaçu moves for partial summary judgment in its favor on Cabrera's affirmative defense and counterclaim.  As a matter of law, the interests purchased by ADM were not "securities" because it is undisputed that ADM was not a "passive investor" but had the right to exercise – and did exercise – substantial management and control of the joint venture entities.

/ / /

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3629

1

### III.   STATEMENT OF UNDISPUTED MATERIAL FACTS

2    For purposes of this motion, the following material facts are not reasonably subject to

3  dispute by Cabrera.

4    ADM's senior executive overseeing operations in Brazil during the ADM-Cabrera

5  transactions was Domingo Lastra.  (Deposition of Domingo Lastra ("Lastra Depo.") 15:3-5, 16:5-

6  7.)[2]  Mr. Lastra testified at deposition that ADM's intention was to enter into a joint venture with

7  Cabrera and build ethanol plants, with the first plant to be constructed in the city of Limeira.  (*Id.*,

8  30:16-19.)  Before ADM entered into the joint venture with Cabrera, there was no actual

9  functioning ethanol plant, only a location and sugar cane fields owned by Cabrera.  (*Id.,* 31:5-13.)

10  While ADM knew the industrial side of the sugar and ethanol business (*id.*, 39:11-13), it wanted to

11  enter into a partnership with Cabrera because of Cabrera's knowledge of agriculture and farming.

12  (*Id.*, 79:6-8.)  Similarly, when ADM and Cabrera first contemplated entering into their Jatai

13  partnership, there was no industrial production at Jatai, only a farm and limited permits.  (Lastra

14  Depo. 64:12-17.)  ADM intended, after entering into a joint venture with Cabrera and developing

15  the Limeira project, to then develop a sugar mill in Jatai.  (*Id.*, 64:18-24, Yu Decl. ¶ 3, Ex.B (Non-

16  binding letter of intent.)

17    On April 22, 2008, ADM and Cabrera signed a non-binding letter of intent, where both

18  parties set forth terms for the joint development of current and future projects related to sugar

19  mills, ethanol distilleries, sugar refineries, related cogeneration facilities and sugar cane

20  plantations.  (Yu Decl. ¶ 3, Ex. B  (Non-binding letter of intent).)  In the letter of intent, ADM and

21  Cabrera agreed to work together in order to define the legal, tax formation and operating structure

22  for the companies and the transaction contemplated therein, with the objective to obtain an

23  economic and efficient structure for the parties.  (*See* Lastra Depo. 28-30 & Yu Decl. ¶ 3, Ex. B.)

24  Following the execution of the letter, ADM conducted a thorough investigation and analysis of the

25  industrial and agricultural sides of the sugar and ethanol business.  (Lastra Depo. 39:8-41:6.)

26

27  [2]  Excerpts of the Lastra Deposition and other relevant exhibits are attached to the accompanying
Declarations of Constance J. Yu ("Yu Decl.") and Leonard Canabrava Turra ("Leonardo Decl.")

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3629

MEMORANDUM IN SUPPORT OF MOTION OF PLAINTIFF IGUAÇU FOR PARTIAL SUMMARY JUDGMENT

ADM and Cabrera also announced on November 4, 2008 that they had formed a joint venture to produce ethanol from sugar cane.  (Yu Decl. ¶ 10, Ex. I (Press Release))  In the press release, ADM executive John Rice was quoted, stating "[t]his joint venture will leverage the expertise of both participants to meet growing Brazilian demand for ethanol."  Cabrera was also quoted, stating "[o]ur partnership with ADM reinforces our commitment to the responsible production of renewable energy."  (*Id.*)

In the documents establishing the joint venture, ADM and Cabrera agreed that they would have equal management rights and equal rights to appoint managers.  (*Id.*, 72:23-74:13 & Yu Decl. ¶ 6 Ex. E (Quotaholders Agreement 20-21).)  ADM was responsible for appointing the commercial and administrative managers, and appointed ADM employees, George Hayes and Heraclio de Jesus as managers for Limeira.  (Lastra Depo. 75:3-14, 123:16-21 & Yu Decl. ¶ 11 (Cabrera's Resp. to Iguaçu's Interrog. # 14).)  ADM's person most knowledgeable on the details of the joint venture was also an ADM employee, Steven Geld.  (Lastra Depo. 37:15-21.)  Steven Geld, ADM's Director of Sugar and Ethanol, reported to Lastra (Lastra Depo. 21:13-16) and attended the shareholder meetings with Lastra (Lastra Depo. 80:9-11.)  The degree of participation and management by ADM and the degree of participation and management of Cabrera were equal and ADM actively participated in the management of Limeira.  (Lastra Depo. 94:20-95:11.)  Both partners of the joint venture appointed Heraclio de Jesus Santana to be the manager of Jatai.  (Yu Decl. ¶ 11).

Cabrera was responsible for sourcing the sugar cane for the plant and was therefore responsible for appointing the agricultural manager.  (Lastra Depo. 78:23-79:2.)  He appointed himself to be the agricultural manager for Limeira and for Bela Vista.  (Yu Decl. ¶ 11).  Cabrera also attended the majority of the shareholder meetings by himself and occasionally with his attorney (Lastra Depo. 80:14-18) and represented his interests himself (Lastra Depo. 95:10-11.)  ADM, through Lastra, later had discussions with Cabrera regarding his shortcomings and his lack of progress regarding the industrial aspect of their joint venture.  (Id., 79:3-20.)

On December 2, 2008, ADM and Cabrera's joint ventures were legally established when ADM purchased 49% of the quotas in Limeira after it was converted from a corporation to an

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3629

LLC.  (*See* Declaration of Constance J. Yu ("Yu Decl.") ¶ 4 Ex. C (Quota Purchase Agreement for Limeira), p. 2; Declaration of Leonardo Canabrava Turra in Support of Plaintiff's Motion for Partial Summary Judgment ¶ 3.)  While Cabrera's wife had a small percentage of the quotas in Limeira before ADM purchased 49% of the quotas, she ceased to be a quotaholder when all her shares were included in the transfer of 49% of Limeira's quotas to ADM.  (Yu Decl. ¶ 4, Ex. C (Quota Purchase Agreement 7.)

ADM also purchased 80% of the quotas in Jatai.[3]  While Cabrera's brother Alexandre and other parties had quotas in Jatai before ADM ultimately purchased 80% of the quotas, he and the other parties ceased to be quotaholders when all their shares were included in the transfer of 80% of Jatai's quotas to ADM.  (Yu Decl. ¶ 5, Ex. D at 7.)  All quota transfers from previous members of Limeira and Jatai were to occur during ADM's purchase of its quotas (*see* Yu Decl. ¶ 4, Ex. C (Quota Purchase Agreement for Limeira 6-7, Yu Decl. ¶ 5, Ex. D ¶ 3.1)

## IV.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).)  A fact is material when, under the governing substantive law, it could affect the outcome of the case. (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).)  A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party.  (*Ibid.*)

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  (*Celotex*, 477 U.S. at 323.)  The moving party can

---

[3] ADM purchased 80% of the quotas in Bela Vista Bio Etanol Participações ("Bela Vista"), which owns 99.9% of the quotas in Jatai.  (*See* Yu Decl. ¶ 7 Ex. F (Quotaholders' Agreement for Jatai), p. 2-3; Declaration of Leonardo Canabrava Turra in Support of Plaintiff's Motion for Partial Summary Judgment ¶ 3.)  Bela Vista also owns all but one quota in Ceres Holding  Participações Ltda. ("Ceres"), and Bacuri Agrícola Ltda. ("Bacuri"), which are other joint ventures between ADM and Cabrera.  However, for purposes of clarity and consistency, the transaction involving ADM's purchase of quotas from Bela Vista will be referred to as the purchase of quotas from Jatai.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3629

1   satisfy this burden in two ways:  (1) by presenting evidence that negates an essential element of

2   the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish

3   an essential element of the nonmoving party's case on which the nonmoving party bears the

4   burden of proving at trial.  (*Id.* at 322-23.)  "Disputes over irrelevant or unnecessary facts will not

5   preclude a grant of summary judgment."  (*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors*

6   *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).)

7       Once the moving party establishes the absence of genuine issues of material fact, the

8   burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed

9   fact remains.  (*Celotex*, 477 U.S. at 324.)

10              **V.      ARGUMENT**

11      **A.    Iguaçu Is Entitled To Summary Judgment on Cabrera's Affirmative Defense
            and First Claim for Relief Because the Undisputed Facts Demonstrate That
12          the Quotas Purchased by ADM Were Not Securities Under Federal Law.**

13      Under federal securities law it is "unlawful for any broker or dealer . . . to effect any

14  transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless

15  such broker or dealer is registered . . . ."  (15 U.S.C. § 78o(a)(1).)  "Security" includes, *inter alia*,

16  stocks and investment contracts.  (15 U.S.C. § 77b(1).)  However, courts have held that because

17  securities transactions are economic in character, Congress intended the application of these

18  statutes to turn on the economic realities underlying a transaction, and not on the label or the

19  name.  (*See, e.g., United Housing Found., Inc. v. Forman*, 421 U.S. 837, 849 (1975).)  The nature

20  of an instrument is determined at the time of issuance, not at some subsequent time.  (*Danner v.*

21  *Himmelfarb*, 858 F.2d 515, 520 (9th Cir. 1988).)

22      Cabrera has argued that the interests in Limeira purchased by ADM constituted "stock"

23  interests.  (Defendant's Mot. To Vacate RTAO 13-14, Docket # 62 ).  The Court rejected that

24  argument, since it is undisputed that ADM agreed to purchase LLC quotas, not stock, and there is

25  no reason for the Court to change that conclusion because no facts have been offered disputing

26  that conclusion.  (*See* Report and Recommendation 4:12-13 ("ADM-Brazil had an agreement to

27  purchase quotas—a fact that Mr. Cabrera does not dispute.") (citing Docket # 64, Fernandes

28  Declaration ¶¶ 6-7 (noting that, at time of closing, Mr. Cabrera and his wife were to convert

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3629

1   Limeira from a corporation to a LLC); Docket # 64 Fernandes Declaration Exhibit 3 (Closing

2   Memorandum at 1)(noting that under a quota purchase agreement, ADM-Brazil was to purchase

3   49% of the quotas of Limeira.)

4   Thus, the only issue presented in this Motion is whether the interests bought by ADM in

5   either the Limeira or Jatai LLCs were "investment contracts" and thus constitute securities.  In

6   *SEC v. W.J. Howey Co.,* 328 U.S. 293, 301 (1946), the Supreme Court held that the test for

7   classifying an interest as an investment contract "is whether the scheme involves an investment of

8   money in a common enterprise with profits to come solely from the efforts of others."  Courts

9   have broken down the *Howey* test into multiple factors: (1) an investment of money, (2) in a

10  common enterprise, and (3) with profits to come solely from the efforts of others.  (*See, e.g.,*

11  *Danner,* 858 F.2d at 518.)  The Report and Recommendation of Judge Chen, adopted by this

12  Court, concluded that the critical factor in this case is the third: whether the profits were expected

13  to come from the efforts of others.  (Report and Recommendation 5:4, Docket # 91.)

14  Courts look to the original intention of the parties when classifying a purported securities

15  transaction.  (*See, Slevin v. Pedersen Associates, Inc.*, 540 F. Supp. 437, 441 (S.D.N.Y. 1982).)

16  However, courts also must consider that "[t]he securities laws were enacted to provide

17  surveillance for those not in a position to monitor their own investments or in the words of the

18  legislative history to protect those who 'cannot personally watch the managers of all his interests

19  as one horse trader watches another.'"  (*Id.* (quoting H.R.Rep. No. 1383, 73d Cong., 2d Sess. 5

20  (1934)); *see also Forman*, 421 U.S. at 849 (primary purpose of the Securities Acts of 1933 and

21  1934 was to eliminate serious abuses in a largely unregulated market, focusing on the need for

22  regulation to prevent fraud and to protect the interest of investors).)

23  Thus, this Court must look to the economic realities underlying the transaction in light of

24  the purpose of the federal securities laws to protect investors who "cannot personally watch the

25  managers of all his interests."  (*Slevin*, 540 F. Supp. at 441.)  Where profits are not expected to

26  come solely from the efforts of others, but in significant part from the investor's own efforts, the

27  transaction is not an investment contract and therefore does not constitute a security.

28  / / /

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3629

MEMORANDUM IN SUPPORT OF MOTION OF PLAINTIFF IGUAÇU FOR PARTIAL SUMMARY JUDGMENT

1    Cabrera's Third Affirmative Defense and First Claim for Relief fail as a matter of law

2   based on the undisputed facts because the LLC quotas ADM purchased from Limeira and Jatai as

3   part of its joint ventures with Cabrera are not considered securities under federal law.

4        **1.    The Limeira Quotas Purchased by ADM Were Not Securities Under Federal Law Because ADM Intended To Purchase an Active Interest in a Joint Venture.**

5

6    ADM's senior executive overseeing operations in Brazil during the ADM-Cabrera

7   transactions was Domingo Lastra.  (Lastra Depo, 15:3-5, 16:5-7.)  Mr. Lastra testified at

8   deposition that ADM's intention was to enter into a joint venture with Cabrera and build ethanol

9   plants, with the first plant to be constructed in the city of Limeira.  (*Id.*, 30:16-19.)  Before ADM

10   entered into the joint venture with Cabrera, there was no actual functioning ethanol plant, only a

11   location and sugar cane fields owned by Cabrera.  (*Id.,* 31:5-13.)  While ADM knew the industrial

12   side of the sugar and ethanol business (*id.*, 39:11-13), it wanted to enter into a partnership with

13   Cabrera because of Cabrera's knowledge of agriculture and farming.  (*Id.*, 79:6-8.)  ADM and

14   Cabrera also announced on November 4, 2008 that they had formed a joint venture to produce

15   ethanol from sugar cane.  (Yu Decl. ¶ 10, Ex. I (Press Release))  In the press release, ADM

16   executive John Rice was quoted, stating "[t]his joint venture will leverage the expertise of both

17   participants to meet growing Brazilian demand for ethanol."  Cabrera was also quoted, stating

18   "[o]ur partnership with ADM reinforces our commitment to the responsible production of

19   renewable energy."  (*Id.*)

20    ADM and Cabrera signed a non-binding letter of intent, setting forth terms for the joint

21   development of current and future projects related to sugar mills, ethanol distilleries, sugar

22   refineries, related cogeneration facilities and sugar cane plantations.  (Yu Decl. ¶ 3, Ex. B  (Non-

23   binding letter of intent).)  In the letter of intent, ADM and Cabrera agreed to work together in

24   order to define the legal, tax formation and operating structure for the companies and the

25   transaction contemplated therein, with the objective to obtain an economic and efficient structure

26   for the parties.  (*See* Lastra Depo. 28-30 & Yu Decl. ¶ 3, Ex. B.)  Following the execution of the

27   letter, ADM conducted a thorough investigation and analysis of the industrial and agricultural

28   sides of the sugar and ethanol business.  (Lastra Depo. 39:8-41:6.)

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3629

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3629

1    ADM and Cabrera agreed that they would have equal management rights and equal rights

2  to appoint managers.  (*Id.*, 72:23-74:13 & Yu Decl. ¶ 6 Ex. E (Quotaholders Agreement 20-21).)

3  ADM was responsible for appointing the commercial and administrative managers, and appointed

4  ADM employees, George Hayes and Heraclio de Jesus as managers for Limeira.  (Lastra Depo.

5  75:3-14, 123:16-21 & Yu Decl. ¶ 11 (Cabrera's Resp. to Iguaçu's Interrog. # 14).)  ADM's person

6  most knowledgeable on the details of the joint venture was also an ADM employee, Steven Geld.

7  (Lastra Depo. 37:15-21.)  Steven Geld, ADM's Director of Sugar and Ethanol, reported to Lastra

8  (*id.*, 21:13-16) and attended the shareholder meetings with Lastra.  (*Id.*, 80:9-11.)  The degree of

9  participation and management by ADM and the degree of participation and management of

10  Cabrera were equal and ADM actively participated in the management of Limeira.  (*Id.*, 94:20-

11  95:11.)  Both partners of the joint venture appointed Heraclio de Jesus Santana to be the manager

12  of Jatai.  (See Yu Decl. ¶ 11).

13    Cabrera was responsible for sourcing the sugar cane for the plant and was therefore

14  responsible for appointing the agricultural manager.  (Lastra Depo. 78:23-79:2.)  He appointed

15  himself to be the agricultural manager for Limeira and for Bela Vista.  (Yu Decl. ¶ 11).  Cabrera

16  also attended the majority of the shareholder meetings by himself and occasionally with his

17  attorney (Lastra Depo. 80:14-18) and represented his interests himself.  (*Id.*, 95:10-11.)  ADM,

18  through Lastra, later had discussions with Cabrera regarding his shortcomings and his lack of

19  progress regarding the industrial aspect of their joint venture.  (*Id.*, 79:3-20.)

20    The above undisputed facts demonstrate that the quotas ADM purchased in Limeira were

21  not securities under federal law because ADM did not expect that the profits from the joint venture

22  with Cabrera would come solely from the efforts of others.  ADM planned to be, and was in

23  reality, actively involved in the venture, and is hardly a passive investor the securities law was

24  intended to protect.  (*See Slevin,* 540 F. Supp. at 441.)  In *Slevin*, the plaintiff alleged that his

25  $25,000 investment for a one-third share of the profits in a plan to construct pre-fabricated houses

26  was an investment contract that constituted a security under federal securities law, while the

27  defendants argued that it was simply a partnership interest and not a security.  (*Id.* at 438.)  The

28  court granted defendants' motion for summary judgment, holding that "a 'contract to invest' is not

LAW OFFICES

SIDEMAN & BANCROFT LLP

ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3629

1  necessarily an 'investment contract' within the meaning of the securities laws" and that "the lack

2  of Slevin's remoteness from the tangible product of his capital investment renders it unnecessary

3  to extend the protection of the securities law to this situation." (*Id.* at 441.)  Looking at the

4  economic realities, the court concluded that "[t]he reality of the situation presented by the instant

5  case is that the plaintiff made an investment in a joint venture with the individual defendant." (*Id.*)

6       The economic reality here is even less susceptible to the finding of a security than in

7  *Slevin*.  ADM, a sophisticated multinational corporation, purchased a 49% interest in Limeira after

8  thoroughly investigating the project, appointed two of the four managers of the LLC, had two

9  senior ADM officers fill those managerial positions, expended millions of dollars to construct the

10  biofuel plant, closely monitored the venture, and when the venture was not progressing as

11  expected, directly approached Cabrera.  In *Slevin,* the plaintiff's decision to provide services to the

12  venture when he thought it was not developing at a proper rate showed he was not a passive

13  investor.  (*Slevin,* 540 F. Supp. at 441.)  Here, ADM provided substantial management services to

14  the joint venture throughout its existence.  The fact that ADM and Cabrera chose to conduct their

15  joint venture through several LLCs does not change the undisputed fact that the parties intended

16  for their relationship to be that of two partners in a joint venture.

17       It is simply irrelevant that ADM ended up owning some LLC quotas which had previously

18  been held by Cabrera's wife or brother,[4] since ADM's 49% interest in Limeira were intended to

19  _____

20  [4]  While Cabrera's wife held a small percentage of the Limeira quotas before ADM purchased
    49% of the quotas, she ceased to be a quotaholder when all her shares were transferred to her
21  husband and included in the transfer of Limeira quotas.  (Yu Decl. ¶ 4, Ex. C (Quota Purchase
    Agreement 7.)  Thus, at the time of the purchase of ADM's quotas, Cabrera's wife no longer had
22  any interest in Limeira.  (*See Danner*, 858 F.2d at 520 (nature of an instrument is determined at
    the time of issuance.)  Further, because the transfer of shares between Cabrera and his wife did not
23  involve any United States citizens and occurred outside the United States, American securities
    laws do not apply to that transaction.  (*In re Banco Santander Securities-Optimal Litigation*, 732
24  F. Supp. 2d 1305, 1317 (S.D. Fla. 2010) (off-shore transactions by non-United States investors do
    not fall under federal securities law); *see also Morrison v. National Australia Bank Ltd.*, --U.S.---,
25  130 S. Ct. 2869, 2885-86 (2010) (transactional test adopted by Court would prevent United States
    courts from interfering with foreign securities regulation).)

26

27

28

MEMORANDUM IN SUPPORT OF MOTION OF PLAINTIFF IGUAÇU FOR PARTIAL SUMMARY JUDGMENT

provide – and did provide – ADM with active participation in and control of the LLC.  While we have not found any case precisely on point, the decision in *Keith v. Black Diamond Advisors, Inc.*, 48 F. Supp. 2d 326, 328 (S.D.N.Y, 1999) is instructive.  There, the plaintiff, together with a small group of investors, had formed Eagle Capital Ltd. and Eagle Capital Corp. (collectively "Eagle") to conduct business as a sub-prime mortgage lender.  The defendant, a venture capital firm, approached plaintiff to offer its services, and the parties decided to jointly form Pace, an LLC. (*Id.*)  Plaintiff and another Eagle investor contributed their Eagle interests to Pace and each received a 25% LLC interest, while the defendant contributed $150,000 in cash and obtained a 50% LLC interest.  (*Id.*)  The court first noted that while the plaintiff's interests in Pace were membership interests in an LLC, such membership interests were not securities unless they met the four *Howey* criteria (scheme where person invests in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party).  (*Id.* at 332.)  In its analysis of the last prong, whether the plaintiff invested with the intention of deriving profit from the effort of others, the court stated that it was clear that the plaintiff intended to maintain some degree of control in Pace and in particular, acquired an interest in Pace pursuant to the defendant's representation that he would oversee marketing operations.  (*Id.*)  The court held that the degree of control the plaintiff had was "antithetical to the notion of member passivity required under the fourth prong of *Howey*" and even if the plaintiff ultimately had a passive interest in Pace, the plaintiff's interests in Pace were not securities because at the time of his investment, the plaintiff did not intend to be a passive investor.  (*Id.* at 333-34.[5])

---

[5]  The plaintiff in *Keith* also alleged that the defendant pressured him into settling litigation with a former co-venturer in Eagle rather than pursuing a cash judgment and argued that the resulting interests he obtained in settlement were securities.  The plaintiff also argued that he was enticed to contribute those settlement interests to Pace LLC and that therefore those interests in Pace were securities.  (*Id.* at 328.)  The court noted that the settlement interests conveyed to Pace were an "unusual instrument" because they were bundled from Eagle Ltd. and Eagle Corp. interests.  (*Id.* at 334.)  However, the court ultimately concluded those interests were not designed to be traded on a public market nor were they widely traded.  (*Id.*)  Thus, the court held that those interests were not securities as a matter of law.  (*Id.* at 335.)  Even if this Court were to find that the interests held by Cabrera's wife are somehow relevant to the analysis of the interests ADM ultimately (footnote continued)

MEMORANDUM IN SUPPORT OF MOTION OF PLAINTIFF IGUAÇU FOR PARTIAL SUMMARY JUDGMENT

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3629

LAW OFFICES

SIDEMAN & BANCROFT LLP

ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3629

1   The undisputed facts above show that the intention of ADM and Cabrera was that Limeira

2   would be a joint venture between the two of them and that the economic reality was that ADM and

3   Cabrera were partners in a joint venture and each intended to make – and did make – substantial

4   management contributions to the venture.  Therefore, as a matter of law, ADM's purchase of

5   quotas in Limeira was not the purchase of securities and Iguaçu was not required to hold a

6   securities license in connection with its services.

7          **2.    The Quotas in Jatai Purchased by ADM Were Not Securities Under
                    Federal Law Because ADM Intended To Purchase an Active Interest in
8                   a Joint Venture.**

9   Because Jatai was an LLC from the beginning of the negotiation process through the

10  closing of the transaction, it is undisputed that the interests ADM purchased were quotas.  Similar

11  to the quotas ADM purchased in Limeira, the quotas ADM purchased in Jatai (and the related

12  quotas in newly formed LLCs Bela Vista, Bacuri and Ceres) were not investment contracts

13  because ADM expected and intended to purchase active interests in the joint venture with Cabrera

14  and did not rely – or intend to rely – on Cabrera to manage the joint venture.

15  When ADM and Cabrera first contemplated the Jatai partnership, there was no industrial

16  production at Jatai, only a farm and limited permits.  (Lastra Depo. 64:12-17.)  ADM intended that

17  after entering into a joint venture with Cabrera and developing the Limeira project, the parties

18  would next develop a sugar mill in Jatai.  (*Id.*, 64:18-24, Yu Decl. ¶ 3, Ex.B (Non-binding letter of

19  intent.)  All references made to Limeira in the Non-binding letter of intent, Quota Purchase

20  Agreements, and Closing Memorandum also referenced the same intent to enter into a joint

21  venture for Jatai.  (*Id.*, Yu Decl. ¶ 3, Ex.B; Yu Decl. ¶ 5, Ex. D (Quota Purchase Agreement for

22  Jatai 5); Yu Decl. ¶ 9, Ex.H (Closing Memorandum for Jatai).)

23  The undisputed evidence shows that ADM did not intend to be and was not a passive

24  investor in Jatai which the securities law was intended to protect.  While some of the LLC quotas

25  _____

26  acquired, like the "unusual instrument" in *Keith*, the interests of Cabrera's were not securities
    because they were not meant to be publicly traded and were transferred to facilitate the creation of
27  the joint venture between ADM and Cabrera.

28

1  purchased by ADM had previously been held by Cabrera's family members,[6] the undisputed facts

2  show that the intention of ADM and Cabrera were that Jatai would be another joint venture

3  between ADM and Cabrera and that later economic realities fulfilled the parties' original

4  intentions.  Therefore, as a matter of law, ADM's purchase of interests in Jatai was not the

5  purchase of a security and summary judgment should be granted.

6  **B.**  **Iguaçu Is Entitled To Summary Judgment on Cabrera's Affirmative Defense and First Claim for Relief Because the Undisputed Facts Demonstrate That the Quotas Purchased by ADM Were Not Securities Under California Law.**

7

8  Under California law, unless exempted, "no broker-dealer shall effect any transaction in, or

9  induce or attempt to induce the purchase or sale of, any security in this state unless the broker-

10  dealer has first applied for and secured from the commissioner a certificate, then in effect,

11  authorizing that person to act in that capacity."  (Cal. Corp. Code § 25210(a).)   As under federal

12  law, a security is defined to include stock and investment contracts.  (Cal. Corp. Code § 25019.)

13  California courts define an investment contract as "a contract or transaction in which a person

14  entrusts money or other capital to another, with the expectation of deriving a profit, income or

15  some financial benefit from a business enterprise, *the failure or success of which is dependent*

16  *upon the managerial efforts of other persons.*  (*People v. Smith*, 215 Cal. App. 3d 230, 235 (1989)

17  (emphasis added).)

18  Unlike federal securities law, California law expressly addresses LLC interests, and

19  provides that a security does not include "membership interest in a limited liability company in

20

21  [6]  While Cabrera's brother Alexandre and other parties held quotas in Jatai before ADM's

22  purchase, those third parties ceased to be quotaholders when their interests were included in the transfer of 80% of Jatai's quotas to ADM.  (Yu Decl. ¶ 5, Ex. D at 7.)  Thus, at the time of the

23  ADM purchased the Jatai quotas, they did not constitute securities.  (*See Danner*, 858 F. 2d at 520.)  Further, the transfers of quotas between Cabrera and his Brazilian family members did not

24  involve any American investors, took place outside the United States and are not subject to federal securities law.  (*See In re Banco Santander Securities-Optimal Litigation*, 732 F. Supp. 2d at 1317

25  (off-shore transactions by non-United States investors do not fall under federal securities law).)

26  Finally, if this Court were to find that the interests previously held by third parties are somehow relevant to the analysis of the interests ADM acquired, they are analogous to the situation in *Keith,*

27  discussed above.  (*See Keith,* 540 F. Supp. at 44.)

28

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3629

MEMORANDUM IN SUPPORT OF MOTION OF PLAINTIFF IGUAÇU FOR PARTIAL SUMMARY JUDGMENT

which the person claiming this exception can prove that *all of the members are actively engaged in the management of the limited liability company*; provided that evidence that members vote or have the right to vote, or the right to information concerning the business and affairs of the limited liability company, or the right to participate in management, shall not establish, without more, that all members are actively engaged in the management of the limited liability company." (Cal. Corp. Code § 25019 (emphasis added).)

In determining whether a transaction involves issuance of a security, California courts also look to the substance and not the form of the transaction and consider facts and circumstances surrounding the execution to determine the true intent of the parties, their mutual purposes and expectations, and the potentialities of rights acquired by the purchaser. (*People v. Woolson*, 181 Cal. App. 2d 657, 671 (1960).) This inquiry goes beyond the mere name of the instrument or the nature of the interest conveyed. (*Oil Lease Service, Inc. v. Stephenson*, 162 Cal. App. 2d 100, 107-08 (1958) (citing *Moore v. Stelling*, 52 Cal. App. 2d 766, 772-73 (1942)).) California courts also consider the regulatory purpose of the corporate securities law when determining whether an instrument is a security. (*Moreland v. Department of Corporations*, 194 Cal. App. 3d 506, 512 (1987) (determination of whether an instrument is security made only after reviewing facts and circumstances and considering the regulatory purpose of the corporate securities law, *i.e.*, to protect the public against spurious schemes).)

In *Moore*, the court looked beyond the name of the instruments (mineral deeds) and analyzed the mutual purposes and expectations of the parties and potentialities of rights to determine whether the transactions were clean-cut transfers of interests to be used by the grantees in profit-sharing ventures or conveyances of interests in real property intended by both seller and buyer to transfer rights to participate in profits in landowner's oil royalties.

Thus, the issue is not whether the interests held by Cabrera or members of his family were passive interests before ADM's purchase, but whether the mutual purposes and expectations of ADM and Cabrera were that ADM would acquire an active interest in the joint venture.

Cabrera's Third Affirmative Defense and First Claim for Relief fail as a matter of law based on the undisputed facts that the LLC quotas ADM purchased in Limeira and Jatai as part of

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3629

LAW OFFICES

SIDEMAN & BANCROFT LLP

ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3629

1    its joint venture with Cabrera provided it with the right to actively engage in management of the

2    LLCs and ADM unquestionably did actively engage in management.

      **1.**      **The Limeira Quotas Purchased by ADM Were Not Securities Under**
3                            **California Law Because All Members Were Actively Engaged in**
4                            **Management.**

5          The undisputed facts discussed above demonstrate that ADM's purchase of quotas in

6    Limeira was not a purchase of securities under California law.  Because all quota transfers from

7    previous members were to occur during ADM's purchase of its quotas (*see* Yu Decl. ¶ 4, Ex. C

8    (Quota Purchase Agreement for Limeira 6-7, Yu Decl. ¶ 5, Ex. D ¶ 3.1), the undisputed facts show

9    that the intention of ADM and Cabrera was to enter into a joint venture and that the purpose of

10   restructuring Limeira and transfer of quotas within Limeira and Jatai before the transaction closed

11   was to set up a venture with only two parties—ADM and Cabrera.  Under Corporations Code

12   section 25019, the undisputed facts establish that both members of the LLC ADM and Cabrera

13   formed for their joint venture were in reality actively engaged in the management of their ethanol

14   production venture.  Thus, as a matter of law, ADM's purchase of interests in Limeira was not the

15   purchase of securities and summary judgment should be granted.

      **2.**      **The Jatai Quotas Purchased by ADM Were Not Securities Under**
16                           **California Law Because All Members Were Actively Engaged in**
17                           **Management.**

18         ADM and Cabrera contemplated a similar approach to developing a production facility at

19   the Jatai location, following completion of the facility at Limeira, and the structure of both LLCs

20   was functionally similar, except that ADM purchased a 49% interest in Limeira and an 80%

21   interest in Jatai (and in the newly-formed LLCs Bela Vista, Bacuri and Ceres).  Thus, the interests

22   ADM purchased in Jatai was not a security under California law.  Cabrera's brother was no longer

23   a quotaholder upon closing of the transaction (*see* Yu Decl. ¶ 5, Ex. D ¶ 3.1), and ADM and

24   Cabrera intended that they were to be the only members of their joint venture and related LLCs.

25   As the undisputed facts show that both parties took active roles in their joint venture, ADM's

26   purchase of interests in Limeira was not the purchase of securities and summary judgment should

27   be granted.

28   / / /

# VI.    <u>CONCLUSION</u>

Cabrera's affirmative defense and claim for relief based on the federal and state securities laws have no applicability to his transactions with ADM.  The U.S. securities laws were never intended to "protect" sophisticated investors like ADM from purchasing active participatory interests in two-party joint ventures. Iguaçu is entitled to partial summary judgment as a matter of law on Cabrera's Third Affirmative Defense and on Cabrera's First Claim for Relief for Rescission.

DATED: November 15, 2012                SIDEMAN & BANCROFT LLP


By:  _____/s/ Robert R. Cross_____
     Robert R. Cross
     Attorneys for Plaintiff
     IGUAÇU, INC.

6620-1\1611577v1

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3629