EDWARD P. SANGSTER (State Bar No. 121041)
ed.sangster@klgates.com
MATTHEW G. BALL (State Bar No. 208881)
matthew.ball@klgates.com
CLAUDIA A. QUIROZ (State Bar No. 254419)
claudia.quiroz@klgates.com
**K&L GATES LLP**
Four Embarcadero Center, Suite 1200
San Francisco, California 94111
Telephone: (415) 882-8200
Facsimile:  (415) 882-8220

Attorneys for ANTONIO CABRERA MANO FILHO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IGUAÇU, INC.,<br><br>            Plaintiff,<br><br>     v.<br><br>ANTONIO CABRERA MANO FILHO,<br><br>            Defendant. | Case No. C 09-0380 RS (NMC)<br><br>**ANTONIO CABRERA MANO FILHO'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE , PARTIAL SUMMARY JUDGMENT**<br><br>Judge:  Honorable Richard Seeborg<br>Date:   December 20, 2012<br>Time:  1:30 p.m.<br>Court:  Courtroom 3, 17th Floor |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 2

    A. Iguaçu Cannot Distinguish the Controlling M&A West Case, Nor Do Iguaçu's Authorities Support Iguaçu's "Economic Reality" Argument. ..................................................................... 2

    B. Iguaçu at Minimum Attempted to Effect Transactions in Securities, and Cannot Recover Its Commissions on that Basis Alone. ............................................................................ 6

    C. Equitable Defenses Do Not Preclude Summary Judgment. ........................................ 7

    D. Mr. Cabrera is Entitled to Partial Summary Judgment on Iguaçu's Claim for Commissions on an Alleged $469 Million in Transactions. ................................................................................. 9

III. CONCLUSION .................................................................................................................. 11

i

**CABRERA'S REPLY MEMO. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT , OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; Case No. C-090380 RS (NMC)**

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Eastside Church of Christ v. National Plan, Inc.*,
    391 F.2d 357 (5th Cir. 1968) .................................................................................. 6, 7, 8

*Keith v. Black Diamond Advisors, Inc.*,
    48 F. Supp. 2d 326 (S.D.N.Y. 1999) ........................................................................ 2, 4, 5

*Landreth Timber Co. v. Landreth*,
    476 U.S. 686, 103 S. Ct. 2297 (1985) ...................................................................... 3, 5

*Lawrence v. The Richman Group Capital Corp.*,
    2005 WL 3448056 (D. Conn. Dec. 15, 2005) ........................................................... 7

*Royal Air Properties, Inc. v. Smith*,
    312 F.2d 210 (9th Cir. 1962) .................................................................................... 8

*S.E.C. v. M&A West, Inc.*,
    538 F.3d 1043 (9th Cir. 2008) .................................................................................. 1, 2, 3

*S.E.C. v. Nat'l Executive Planners, Ltd.*,
    503 F. Supp. 1066 (M.D.N.C. 1980) ........................................................................ 6

*S.E.C. v. W.J. Howey Co.*,
    328 U.S. 293 (1946) .................................................................................................. 4, 5

*Slevin v. Pedersen Associates, Inc.*,
    540 F. Supp. 437 (S.D.N.Y. 1982) ........................................................................... 2, 5

*Stilwell v. Smith & Nephew, Inc.*,
    482 F.3d 1187 (9th Cir. 2007) .................................................................................. 10

*Triton Energy Corp. v. Square D Co.*,
    68 F.3d 1216 (9th Cir. 1995) .................................................................................... 10

*U.S. v. Union Pacific R. Co.*,
    565 F. Supp. 2d 1136 (E.D. Cal. 2008) .................................................................... 10

**STATE CASES**

*Dickson, Carlson & Campillo v. Pole*,
    83 Cal. App. 4th 436 (2000) ..................................................................................... 8

**FEDERAL STATUTES**

15 United States Code
    § 78cc ........................................................................................................................ 8
    § 78o .......................................................................................................................... 6

**STATE STATUTES**

California Corporations Code
    § 25019 ...................................................................................................................... 3

ii

**CABRERA'S REPLY MEMO. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT , OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; Case No. C-090380 RS (NMC)**

**FEDERAL RULES**

Federal Rules of Civil Procedure 56 ................................................................................................ 1

**LOCAL RULES**

Northern District Local Rule 56-3 ................................................................................................... 1

**OTHER AUTHORITIES**

1 B.E. Witkin, *Contracts*
  § 436 (10th Ed. 2005 & Supp. 2012) ........................................................................................ 8

## I.   INTRODUCTION

Plaintiff Iguaçu, Inc. has failed to contest, and therefore concedes, that (1) Iguaçu was a broker, not a finder; (2) Iguaçu was unregistered under federal securities laws, and unlicensed under California securities laws, and (3) that Iguaçu brokered Mr. Cabrera's interests in CCEAA and Jataí in the United States and California.  Plaintiff Iguaçu, Inc.'s Opposition to Defendant Antonio Cabrera Mano Filho's Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment ("Plaintiff's Opp'n") at 1:14-18 [Dkt. No. 245].[1]

The only remaining issue is a pure issue of law:  whether the interests in Cabrera Central Energética Açúcar e Álcool, S.A. ("CCEAA"), and Usina de Açúcar e de Álcool Jataí Ltda. ("Jataí") sold to ADM constitute "securities" under federal or California securities law.  This issue itself turns on a very clear question:  when employing the "economic reality" test to determine whether a particular transaction is or is not a sale of securities, must the Court consider the transaction as a whole, or can the Court decide based on the intended post-closing result of the parties to the transaction?  Mr. Cabrera's argument, that the Court must consider the transactions in their entirety, is backed by controlling Ninth Circuit authority which Iguaçu failed to distinguish.  *S.E.C. v. M&A West, Inc.*, 538 F.3d 1043 (9th Cir. 2008).  By contrast, Iguaçu's authority consists of two trial court opinions from the Southern District of New York, both of which are distinguishable from the present case.  Mr. Cabrera's argument should thus prevail on this legal question, and summary judgment should be granted in his favor.

Even if the Court disagrees with Mr. Cabrera's view of the law, however, the Court should still enter partial summary judgment on Iguaçu's claim for commissions on $469,219,346 BRL of

---

[1] Iguaçu claims that it is "ignoring" rather than "conceding" these issues.  Plaintiff's Opp'n at 1:14-18.  The difference is irrelevant – either way, Plaintiff failed to make a showing in its Opposition that there were genuine issues of material fact preventing adjudication of those issues.  Plaintiff also makes the statement that Mr. Cabrera "has utterly failed to show that his evidence is 'so powerful that no reasonable jury would be free to disbelieve it.'"  Plaintiff's Opp'n at 7:10-13 [Dkt. No. 245].  However, Iguaçu has not shown or even attempted to argue that Mr. Cabrera failed to meet his burden on these issues under Federal Rule of Civil Procedure 56.  Accordingly, Mr. Cabrera respectfully requests the Court treat the other issues raised in Defendant Cabrera's Motion as established for purposes of trial pursuant to Northern District Local Rule 56-3, should this Court find a genuine issue of material fact exists on the "securities" issue.

1

**CABRERA'S REPLY MEMO. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT , OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; Case No. C-090380 RS (NMC)**

allegedly commissionable transactions, because Iguaçu has utterly failed to introduce any evidence to demonstrate that there is a genuine issue of material fact as to those transactions.

## II.  ARGUMENT

### A.  Iguaçu Cannot Distinguish the Controlling M&A West Case, Nor Do Iguaçu's Authorities Support Iguaçu's "Economic Reality" Argument.

By failing to address the issue, Iguaçu concedes that interests in CCEAA were "securities" from February 18, 2008, through December 2, 2008, and that interests in Jataí were "securities" from November 23, 2007, through December 2, 2008.  Defendant Antonio Cabrera Mano Filho's Motion for Summary Judgment, or, in the Alternative, Partial Summary Judgment at ("Defendant's MSJ") at 10:3-21 & 19:23-21:4.

Mr. Cabrera exhaustively presented his view of the "economic reality" of the transactions with ADM in the Memorandum in Opposition to Plaintiff Iguaçu, Inc.'s Motion for Partial Summary Judgment ("Cabrera's Opp'n") [Dkt. No. 248], just as Iguaçu, Inc. presented its view in their Motion for Partial Summary Judgment [Dkt. No. 231].  Mr. Cabrera will not repeat the arguments he made in opposing Iguaçu's motion, but instead will limit discussion here to new matter raised in Plaintiff's Opposition with the exception of a more involved discussion of two of Iguaçu's authorities, *Keith v. Black Diamond Advisors, Inc.*, 48 F. Supp. 2d 326 (S.D.N.Y. 1999), and *Slevin v. Pedersen Associates, Inc.*, 540 F. Supp. 437 (S.D.N.Y. 1982).

As it must, Iguaçu attempts to distinguish Mr. Cabrera's key case, S.*E.C. v. M&A West, Inc.*, *supra*, 538 F.3d 1043.  First, Iguaçu attempts to distinguish *M&A West* on the ground that, unlike in that case, here there is no evidence that the transaction was purposely structured to evade the securities laws.  Plaintiff's Opp'n at 9:3-7 [Dkt. No. 245].  Although the Ninth Circuit in *M&A West* does discuss the defendant's attempt to "create a loophole" and thereby avoid the registration requirements of Section 5 of the Securities Act (*M&A West, Inc.*, 538 F.3d at 1053), there is nothing in the *M&A West* court's legal discussion to suggest that its view of "economic reality" depends on the defendant's intent, rather than the characterization of the transaction itself.[2]

---

[2]  Even though Iguaçu's intent is irrelevant for the purpose of this Motion, it is worth noting that the Seller's Finder's Agreement with Iguaçu, Inc. (*see* Declaration of Matthew G. Ball in Support of Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment, Exh. A

2

**CABRERA'S REPLY MEMO. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT , OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; Case No. C-090380 RS (NMC)**

Next, Iguaçu attempts to distinguish *M&A West* on the ground that Iguaçu did not dictate the structure of the transaction, asserting that the "peculiar and unforeseeable nature" of the transaction was decided between Mr. Cabrera and ADM, without Iguaçu's involvement. Plaintiff's Opp'n at 9:2-11. Again, nothing in the *M&A West* court's discussion of "economic reality" suggests that the "economic reality" of the transaction should turn on the specific nature of the involvement of the party who seeks to avoid the impact of the federal or state securities laws. To hold otherwise would be to inject substantial uncertainty into a question that, in some instances, can be quite uncertain already.

Ironically, it is only the "peculiar and unforeseeable manner in which ADM and Cabrera elected to structure their joint venture" (Plaintiff's Opp'n at 9:10-11 [Dkt. No. 245]), that gives Iguaçu any chance at all escape the effects of its failure to properly register or obtain a license. If the CCEAA transaction had proceeded as a straight stock purchase, then clear U.S. Supreme Court authority would hold that a sale of securities had taken place regardless of ADM's post-closing intent. *See Landreth Timber Co. v. Landreth*, 476 U.S. 686, 690, 103 S. Ct. 2297, 2302, 2304 (1985) (sale of stock in a closely held company was sale of "stock" covered by securities laws even though the purchaser intended to actively manage the corporation after the sale). Similarly, without the simultaneous, multi-stage transaction there would be no question that the interests in Jataí were securities under federal and California law, because Iguaçu has made no effort to show that all members of Jataí actively managed the LLC to and through the closing of the ADM transaction. Cal. Corp. Code § 25019 (LLC interest is security unless party claiming otherwise can show that all members are active managers); *see also* Defendant's MSJ at 19:24-21:4 (discussing why the Jataí interests are securities under federal law). In short, without the "peculiar and unforeseeable"

---

(Agreement)) [Dkt. No. 235] is purposefully structured to evade the securities laws. In paragraph 5, the Agreement provides that "Finder shall not advise on the merits of, nor have any role in the arranging and/or negotiation of any sale . . . . It is understood that Finder is acting as a finder only [and] is not a licensed securities . . . broker or dealer in California . . . and is not authorized to perform any act which would require Finder to become so authorized, regulated, or licensed." As Plaintiff has conceded, there is no dispute in this case whether Iguaçu is a broker, rather than a finder, and certainly advised on the merits of the sale and assisted in the negotiations. Defendant's MSJ at 5:9-7:13 [Dkt. No. 233].

3

**CABRERA'S REPLY MEMO. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT , OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; Case No. C-090380 RS (NMC)**

transaction, there would be no question that Iguaçu had illegally brokered securities. This is exactly why the Court should take into account the economic reality of both transactions in their entirety.

Iguaçu next claims that "[n]o public policy would be served by penalizing Iguaçu for the particular and unforeseeable manner in which ADM and Cabrera elected to structure their joint venture." Plaintiff's Opp'n at 9:9-11 [Dkt. No. 245]. This argument ignores the fact that, for nearly a year in the case of CCEAA, and more than a year in the case of Jataí, Iguaçu attempted to broker the sale of what were undoubtedly securities, which is unquestionably illegal. Defendant's MSJ at 5:10-10:2; 22:23-25:6 [Dkt. No. 233]. Additionally, Mr. Cabrera showed in his Opposition to Plaintiff's Motion for Partial Summary Judgment that the securities laws were also enacted to protect sellers, and that there were good reasons why Mr. Cabrera needed the protection registration affords. Defendant Antonio Cabrera Mano Filho's Memorandum in Opposition to Plaintiff Iguaçu's Motion for Partial Summary Judgment ("Defendant's Opp'n") at 13:16-16:25 [Dkt. No. 248]. Here, the better public policy would be to take a view of "economic reality" that did not absolve Iguaçu of its securities laws violations – which, as discussed in Mr. Cabrera's opposition to Plaintiff's Motion, most definitely harmed Mr. Cabrera. *Id.*

The key case that Plaintiff relies upon to support its position is *Keith v. Black Diamond Advisors, Inc.*, *supra*, 48 F. Supp. 2d 326. *Keith* involved a plaintiff who invested in a newly formed LLC, and then became involved in a dispute with the other members. *Id.* at 328. The issue was whether the interests in the newly formed LLC constituted an "investment contract," and thus "securities," under the test set forth in *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293 (1946), so to allow the Plaintiff to sue the various defendants for securities fraud arising out of the purchase of the LLC interests. *Id.* at 332. The court reached the unremarkable conclusion that the LLC interests were not securities, because plaintiff did not intend to be a passive investor. Citing *Keith*, Iguaçu thus argues that because ADM and Cabrera intended to actively manage the joint venture after the closing, the quota interests purchased cannot be securities. Plaintiff's Opp'n at 8:6-14 [Dkt No. 245].

*Keith* does not assist Iguaçu, because *Keith* is not controlling authority on how "economic reality" should be viewed in this case. Moreover, *Keith* is distinguishable, in that *Keith* did not involve a multi-stage transaction where several parties sold stock and LLC interests for cash, and as

4

part of the transaction, the parties simultaneously agreed to convert such stock and LLC interests into other LLC interests, with the intention that the purchaser and remaining seller would participate in the management of the new LLCs after closing.  *Keith* instead involved interests that were never securities, either before or after the purchase.  As such, Plaintiff's citation to *Keith* only begs the question that this Court has to answer in order to rule on the cross-motions:  when employing the "economic reality" test to determine whether a particular transaction is or is not a sale of securities, must the Court consider the transaction as a whole, or can the Court decide based on the intended post-closing result of the transaction?  *Keith* would help this Court answer this question only if this Court first accepts Iguaçu's premise that the "economic reality" of a transaction turns on this intended post-closing result.  Because the interest at issue in *Keith* was never a security at any time, *Keith* can provide no support for the premise itself.

Plaintiff also relies on *Slevin v. Pedersen Associates, Inc.*, *supra,* 540 F. Supp. 437, for the proposition that "the nature of a transaction should be judged by the original intention of the parties in order protect investors who 'cannot personally watch the managers of all his interests.'"  Plaintiff's Opp'n at 7:28-8:5.  Again, *Slevin* is not controlling authority, and the facts of *Slevin* are so different from the facts of this case that *Slevin* would not be helpful in any event.  *Slevin* involved an individual who made an oral contract to invest in a friend's business building prefabricated housing in Venezuela pursuant to an oral agreement.  *Id.* at 438.  The court held that the "spirit of the investment contract definition as enunciated in *Howey* was not meant to encompass an oral agreement between friends to pioneer a market and closely follow the progress of the project." *Id.* at 441.

Plaintiff also refers throughout its brief to the fact that ADM was not a "passive investor," implying that the federal securities laws were strictly and only for the protection of passive investors. This notion is inconsistent with the U.S. Supreme Court's pronouncement in *Landreth Timber Company*:

\\\\

\\\\

\\\\

5
**CABRERA'S REPLY MEMO. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT , OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; Case No. C-090380 RS (NMC)**

> [W]e cannot agree with respondents that the [Securities] Acts were intended to cover only 'passive investors' and not privately negotiated transactions involving the transfer of control to 'entrepreneurs.' The 1934 Act contains several provisions specifically governing tender offers, disclosure of transactions by corporate officers and principal stockholders, and the recovery of short swing profits gained by such persons. [citations omitted]. Eliminating from the definition of 'security' instruments involved in transactions where control passed to the purchaser would contravene the purpose of these provisions.

471 U.S. at 692, 105 S. Ct. at 2305.

**B.    Iguaçu at Minimum Attempted to Effect Transactions in Securities, and Cannot Recover Its Commissions on that Basis Alone.**

In his opening brief, Mr. Cabrera conclusively demonstrated that even if Mr. Cabrera's interests were not technically "securities" at the time of the closing of the Quota Purchase Agreements,[3] undisputed facts show that from November 23, 2007, through the closing date on December 2, 2008, Iguaçu attempted to induce ADM to purchase Mr. Cabrera's securities, or to effect the transaction of those securities. Defendant's MSJ at 22:25-23:6 [Dkt. No. 233]. Accordingly, Iguaçu cannot recover its commissions on that basis alone.

Iguaçu has only two responses to this point, and both fail. First, Iguaçu argues that there is no evidence that "Iguaçu knew the existing structure of the Cabrera entities[.]" Plaintiff's Opp'n at 1 n.1. This is irrelevant, because 15 U.S.C. § 78o(a)(1), which makes it unlawful for an unregistered broker to attempt to induce the purchase or sale of any security, contains no scienter requirement. *S.E.C. v. Nat'l Executive Planners, Ltd.*, 503 F. Supp. 1066, 1073 (M.D.N.C. 1980) (citing *Eastside Church of Christ v. National Plan, Inc.*, 391 F.2d 357, 361-62 (5th Cir. 1968)). Moreover, Iguaçu's principal, Shobha Seturum, admitted in a declaration that Dr. Cabrera expressed his interest in selling his "stock" in CCEAA in their very first conversation. Declaration of Shobha Seturam in Support of Plaintiff's Ex Parte Application for Right to Attach Order ("Seturam RTAO Decl.") ¶ 2, p. 2:7-12 [Dkt. No. 26].[4]

---

[3] Mr. Cabrera contends that the quotas themselves were securities.

[4] She also declared that Mr. Cabrera expressed an interest in selling his "stock" in Jataí. Seturam RTAO Decl.") ¶ 2, p. 2:7-12 [Dkt. No. 26].

6

Second, Iguaçu argues that there is no evidence that it "advertised, marketed, or attempted to induce ADM to purchase 'stock' or other form of 'security' from Cabrera." Plaintiff's Opp'n at 1 n.1. Iguaçu admitted this itself in connection with the Right to Attach Order Briefing. Specifically, Ms. Seturam declared that in her first conversation with Mr. Cabrera, Mr. Cabrera was willing to sell his "stock" in CCEAA and Jataí. Seturam RTAO Decl. ¶ 2, p. 2:7-12 [Dkt. No. 26]. Ms. Seturam further testified that "Iguaçu actively began efforts to locate potential investors in Dr. Cabrera's ventures . . . ." *Id.* at ¶ 3, p. 2:16. Ms. Seturam declared further that "[b]y June 28, 2007, senior officials of Archer Daniels Midland ("ADM") located in Decatur, Illinois, had confirmed to me that ADM would be willing to work with Iguaçu . . . to pursue Brazilian greenfield ethanol production opportunities." *Id.* at p. 2:20-23. She declared that "[o]n or about November 2, 2007, I received an email from ADM . . . expressing ADM's interest in a deal with Dr. Cabrera." *Id.* at ¶ 6, p.3:15-17. In addition to this testimony, Mr. Cabrera in his Motion introduced so much evidence of Iguaçu's attempt to broker the securities in question that Iguaçu effectively conceded the issue. Defendant's MSJ at 5:9-10:2. In other words, there is plenty of evidence – none of it controverted.

**C.    Equitable Defenses Do Not Preclude Summary Judgment.**

Iguaçu argues, without citation to evidence and almost without citation to authority, that Cabrera's third affirmative defense is barred by unjust enrichment, unclean hands, estoppel and waiver. Plaintiff's Opp'n at 9:12-10:1.

Iguaçu cites no cases holding that the equitable defense of unjust enrichment applies to prevent Mr. Cabrera from relying on Iguaçu's violation of state and federal securities laws to defeat Iguaçu's claim. Very few courts appear to have addressed this question, but those which have hold that a claim of unjust enrichment cannot lie in these circumstances, because it would undermine the remedial purposes of federal laws requiring securities brokers to register. *Lawrence v. The Richman Group Capital Corp.*, 2005 WL 3448056, \*2 (D. Conn. Dec. 15, 2005) (in claim alleging breach of exclusivity agreement to market investment funds, holding that policies underlying federal broker registration requirements prevent application of unjust enrichment claim); *see also Eastside Church of Christ v. National Plan, Inc.*, 391 F.2d 357, 362 (5th Cir. 1968) (although voiding contract of unregistered broker is a harsh remedy, it is justified by the policy behind registration requirements);

7

1  *see generally* 1 B.E. Witkin, *Contracts* § 436 (10th Ed. 2005 & Supp. 2012) (ordinarily, guilty party
2  may not recover value of performance in quasi-contract if contract is illegal).

3        Similarly, Iguaçu cites no cases holding that the equitable defense of unclean hands is
4  available. Under California law, the defense of unclean hands requires proof of inequitable conduct
5  in connection with the matter in controversy. *Dickson, Carlson & Campillo v. Pole*, 83 Cal. App. 4th
6  436, 446 (2000). Iguaçu has not given examples of any inequitable conduct other than the fact Mr.
7  Cabrera raised the securities affirmative defense in response to Plaintiff's lawsuit. Plaintiff's Opp'n
8  at 9:24-25 ("Cabrera failed to invoke the provisions of the securities laws until after having greatly
9  benefited from the transactions with ADM" [*i.e.*, after the transactions closed and Iguaçu sued]) [Dkt.
10 No. 245]. Iguaçu does not and cannot explain how merely raising the defense constitutes inequitable
11 conduct.

12       Iguaçu cites to *Royal Air Properties, Inc. v. Smith*, 312 F.2d 210, 213-214 (9th Cir. 1962), for
13 the proposition that estoppel and waiver are applicable to a claim brought to void a contract under
14 Section 29(b) of the Exchange Act (15 U.S.C. § 78cc(b)). Plaintiff's Opp'n at 9:16-21 [Dkt. No.
15 245]. However, Iguaçu then wholly fails to discuss the elements of these defenses and how they
16 might defeat to Mr. Cabrera's affirmative defense. If Iguaçu is relying on *Royal Air Properties* itself,
17 such reliance is misplaced because the case is distinguishable. In *Royal Air Properties*, the plaintiff
18 purchased stock, later became a director of defendant corporation, learned of the facts surrounding
19 his claim, waited until the corporation ran into financial trouble to raise his claim, unsuccessfully
20 attempted to take over the corporation, sold stock for a loss, and only then filed his claim. *Id.* Here,
21 Mr. Cabrera did nothing besides raise the securities defense when sued. If this fact situation presents
22 a waiver or estoppel, then a seller could never raise this defense against an unregistered broker. This
23 clearly is not the law. *See Eastside Church of Christ*, *supra*, 391 F.2d at 362.[5]

---

26 [5] Plaintiff's Opposition also asserts that these equitable defenses are proper here because Mr. Cabrera is not the intended beneficiary of the relevant securities laws. Plaintiff's Opp'n at 9:25-
27 26. Plaintiff cites no authority for this proposition, and indeed it is not true. *See Eastside Church of Christ*, *supra*, 391 F.2d at 362. Even if it were true, Plaintiff makes no attempt to relate its position
28 to the elements of any of the defenses it claims apply.

8

**CABRERA'S REPLY MEMO. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT , OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; Case No. C-090380 RS (NMC)**

### D. Mr. Cabrera is Entitled to Partial Summary Judgment on Iguaçu's Claim for Commissions on an Alleged $469 Million in Transactions.

Mr. Cabrera showed in his opening brief that Iguaçu had no competent evidence to support its claim for commissions on $469 million BRL in allegedly commissionable transactions. Defendant's MSJ at 12:24-16:4 & Appendix A [Dkt. No. 233]. Iguaçu has done nothing in response to demonstrate the existence of a genuine issue of material fact. Iguaçu has not taken issue with Mr. Cabrera's characterization of the testimony of Charles Sterck, Iguaçu's expert, and there is no declaration from Mr. Sterck asserting that his testimony has been misconstrued or misinterpreted. Neither has Iguaçu indicated where in the record may be found other evidence that would create a genuine issue of material fact on these damage claims.[6]

Although Iguaçu claims that the fault lies in Mr. Cabrera's discovery conduct (Plaintiff's Opp'n at 11:14-12:4),[7] the fact remains that Iguaçu has not indicated that any further information on

---

[6] Iguaçu does cite very generally to Mr. Sterck's expert report itself. Plaintiff's Opp'n at 10:14-24, 11:8-13 [Dkt. No. 245]. However, Mr. Sterck's report is inadmissible hearsay and cannot create a genuine issue of material fact, even if Mr. Cabrera had not demonstrated through deposition that Mr. Sterck's figures in Summary No. 2 are completely unreliable by his own admission. Defendant's MSJ at 13:15-14:14 & Appendix A.

[7] Iguaçu's accusation that Mr. Cabrera intentionally waited until the eve of the discovery cutoff to produce a voluminous set of documents (Plaintiff's Opp'n at 4:14-23; 11:14-12:4 [Dkt. No. 245]) seriously misconstrues the reality of the discovery process in this case. Iguaçu served its initial discovery requests on July 7, 2011. *See* Declaration of Claudia A. Quiroz ISO Reply Memorandum in Support of Motion for Summary Judgment ("Quiroz Decl.") ¶ 2. It then waited an entire year to send a meet and confer letter to defense counsel citing to purported deficiencies in Mr. Cabrera's production. *Id.* On August 31, 2012 – on the last possible court day prior to the discovery cutoff to serve discovery requests by hand – Iguaçu delivered to defense counsel a second set of requests for production of documents. *Id.* ¶¶ 3, 4. Following several meet and confer efforts and a Joint Stipulation entered into between the parties on September 27, 2012, the Court entered an order confirming the parties' stipulation to continue the deadline for Mr. Cabrera to produce documents to October 5, 2012 and granting their request to issue a ruling allowing Mr. Cabrera to make this production outside the discovery cut-off period. *Id.* ¶ 6, Exhs. C, D. *See also id.* ¶ 5. Contrary to Iguaçu's assertions, the Court did not order Mr. Cabrera to do anything in addition to what he had already agreed to as set forth in the stipulation. *See id.* ¶ 6, Exhs. C, D. Of the 32,914 pages that Mr. Cabrera produced on October 5, 2012 (on time) that Iguaçu mischaracterizes as a "belated" production, 684 pages were a supplemental production responsive to Iguaçu's first set of discovery requests and 284 pages were part of Mr. Cabrera's supplemental disclosures. *Id.* ¶ 7. Mr. Cabrera's supplemental production mainly consisted of documents previously produced to Iguaçu by ADM, documents that Mr. Cabrera received from ADM in conjunction with the arbitration proceeding in Brazil after Iguaçu served its initial discovery requests in July 2011, and loan agreements and meeting minutes that Mr. Cabrera had previously produced to Iguaçu. *Id.* ¶ 7. The rest of the production (i.e., 31,946 pages or 97% of it) was entirely responsive to requests for documents that Iguaçu did not make until the last possible minute. *Id.* ¶ 7. To make matters worse, Iguaçu's

1  these alleged transactions will ever be forthcoming, despite the fact that it has now been well over a

2  month since Mr. Cabrera took Mr. Sterck's deposition. The Court should take this as a tacit

3  admission that there will be no further information, and Plaintiff has now put its best evidentiary foot

4  forward.

5  Finally, Iguaçu claims that Mr. Cabrera may not challenge Mr. Sterck's testimony at the

6  summary judgment stage. Plaintiff's Opp'n at 12:5-13 (citing *U.S. v. Union Pacific R. Co.*, 565 F.

7  Supp. 2d 1136 (E.D. Cal. 2008) and *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187 (9th Cir. 2007).

8  Iguaçu is wrong. A trial court certainly may grant summary judgment when the only evidence

9  introduced by the opposing party is an unreliable expert opinion. *Triton Energy Corp. v. Square D

10 Co.*, 68 F.3d 1216, 1222 (9th Cir. 1995) (upholding a trial court's grant of summary judgment in a

11 product liability case where the opposing expert testified that the product was defective, but had

12 never examined the defective product and was thus too unreliable to create a genuine issue of

13 material fact). This case is more clear cut than *Triton Energy* because Iguaçu's expert himself

14 essentially admits that his testimony is unreliable.

15 \\\\

16 \\\\

17 \\\\

18 \\\\

19 \\\\

20 \\\\

21 \\\\

22 \\\\

23 \\\\

24

---

25 assertion that the production was unsearchable and that Defense counsel refused to provide the files in a searchable form despite Iguaçu's requests is simply false. Notwithstanding the fact there was no

26 agreement between the parties as to how documents should be produced, the format of Mr. Cabrera's production was entirely consistent with industry standards and able to be readily processed and

27 OCR'd from the .tiff images and load files using any basic litigation software. *See id.* ¶¶ 8-10. The documents were also bates numbered in sequence, and organized according to the specific request.

28 *Id.* ¶ 7. Defense counsel explained this to Iguaçu's counsel in writing on October 8, 2012, to which Iguaçu's counsel provided no additional follow up. *Id.* ¶ 11, Exh. E.

**CABRERA'S REPLY MEMO. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT , OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; Case No. C-090380 RS (NMC)**

### III.   CONCLUSION

For the foregoing reasons, Defendant Cabrera respectfully requests this Court to grant his motion for summary judgment, or, in the alternative, his motion for partial summary judgment directed at Iguaçu's claims for commissions on $469 million BRL in allegedly commissionable transactions.

Respectfully submitted

Dated:  December 6, 2012          By:     */s/ Matthew G. Ball*
                                                Edward P. Sangster
                                                ed.sangster@klgates.com
                                                Matthew G. Ball
                                                matthew.ball@klgates.com
                                                Claudia A. Quiroz
                                                claudia.quiroz@klgates.com

                                                Attorneys for Defendant
                                                ANTONIO CABRERA MANO FILHO

11

**CABRERA'S REPLY MEMO. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT , OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; Case No. C-090380 RS (NMC)**