IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

IGUAÇU, INC.,

        Plaintiff,

  v.

ANTONIO CABRERA MANO FILHO,

        Defendant.
_____/

No. C 09-0380 RS

**ORDER ON PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS**

## I. INTRODUCTION

Plaintiff Iguaçu, Inc. brought this action against defendant Antonio Cabrera Mano Filho ("Cabrera") seeking to recover commissions for services it allegedly rendered in facilitating certain business transactions between Cabrera and an entity known as ADM-Brazil. Iguaçu asserted breach of a written "Finder's Agreement," which includes an attorney fee provision. A jury found that Cabrera indeed breached the agreement. It awarded damages, however, of only $446,355, a mere fraction of the more than $10 million Iguaçu insisted was owed. Iguaçu now moves for an award of attorney fees in the amount of approximately $1.4 million and certain non-taxable costs.

Although Iguaçu was a "prevailing party" within the meaning of the applicable fee-shifting statute and therefore is entitled to recover fees, its limited success mandates a substantial reduction

in the amount of fees that can be shifted to Cabrera. Accordingly, as explained in more detail below, fees and non-taxable costs in the total amount of $692,405.54 will be awarded.

## II.  LEGAL STANDARD

The calculation of a reasonable fee award involves a two-step process. *Fisher v. SJB–P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000).  First, the court calculates the presumptive fee award, also known as the "lodestar figure," by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate. *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  Second, in "appropriate cases" the court may enhance or reduce the lodestar figure based on an evaluation of the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975), that were not taken into account in the initial lodestar calculation. *Intel Corp. v. Terabyte Intern., Inc.*, 6 F.3d 614, 622 (9th Cir. 1993) (citation omitted).

## III.  DISCUSSION

A.  <u>Prevailing party</u>

As a first line of defense to the fee motion, Cabrera strenuously argues there is discretion under California law to find Iguaçu was not a "prevailing party," and he urges the Court to exercise that discretion to rule accordingly.[1]  California Civil Code § 1717 provides that "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs . . . shall be awarded[,] . . . then the party who is determined to be the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees in addition to other costs." Cal. Civ. Code § 1717(a).  The section provides for the court to determine which party prevailed, by applying the definition that it is "the party who recovered a greater relief in the action on the contract." § 1717(b)(1). The trial court is expressly given power to "determine that there is no party prevailing on the contract for purposes of this section." *Id.*

---

[1] Section 13 of the Finder's Agreement provides that it is governed by California law.  Section 14 provides: "Attorney's Fees: In the event of a dispute arising out of or relating to this Agreement, the prevailing party shall be awarded its reasonable attorneys' fees and costs."

The discretion to find that no party prevailed within the meaning of § 1717 is not unfettered, however. In *Hsu v. Abbara*, 9 Cal.4th 863 (1995), the California Supreme Court held that the statute compels an attorney fee award where "a defendant obtains a simple, unqualified victory by defeating the only contract claim in the action." *Id.* at 877. While the court endorsed the principle that "in determining litigation success, courts should respect substance rather than form, and to this extent should be guided by 'equitable considerations,'" it cautioned against considering matters "unrelated to litigation success, such as the parties' behavior during settlement negotiations or discovery proceedings." *Id.*

In the present case, because Iguaçu did not "obtain[] a simple, unqualified victory," the *Hsu* holding is not directly on point. Nevertheless, *Hsu* advised that, "in deciding whether there is a 'party prevailing on the contract,' the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." *Id.* Cabrera urges that such an evaluation here should focus on the disparity between the "tens of millions of dollars" Iguaçu claimed before and during trial, and the $446,355 jury award. Cabrera points to *Berkla v. Corel Corp.*, 302 F.3d 909 (9th Cir. 2002), in which the Ninth Circuit found no abuse of discretion in the trial court's determination that the plaintiff had not prevailed within the meaning of § 1717, despite his recovery of $23,500 in contractual damages.

The *Berkla* court observed:

> [I]t is clear from *Hsu* that a court is entitled to look at more than the issue of liability in determining prevailing party status, and to evaluate litigation success in light of the party's overall demands and objectives. In this case, these demands and objectives clearly involved a substantial financial payoff for [plaintiff]. The jury, however, completely rejected [plaintiff's] contractual damages theory, instead awarding damages consistent with the estimates offered by [defendant's] expert.

302 F.3d at 920.

If the issues in this case had been limited to the existence of a contractual breach and the amount of damages, the parallels to *Berkla* would be highly compelling. The jury here similarly rejected Iguaçu's approach to contractual damages, "instead awarding damages consistent with the

3

estimates offered by" Cabrera.  Merely characterizing this as a case in which the plaintiff recovered "only a part of the relief sought," however, gives unduly short shrift to Cabrera's heavily litigated contentions that the Finder's Agreement was void for illegality, or unenforceable as the result of drafting issues.

It is true the evidence at trial demonstrated that, prior to the litigation arising, Cabrera offered to pay commissions under the Finder's Agreement pursuant to a calculation like that apparently accepted by the jury, and in an amount nearly identical to the eventual award.  While some of Cabrera's testimony was equivocal as to whether and when he ever believed he had a legal obligation to pay commissions to Iguaçu under the agreement, there is no reason to doubt that he would have done so had there not been such a great disparity in the parties' views as to the proper basis for making the calculations, and the resulting disagreement as to the total amount due.  When the dispute culminated in litigation, however, Cabrera took a more aggressive position that Iguaçu had engaged in the unlicensed brokerage of securities, rendering the agreement void for illegality.  Cabrera also sought to establish no enforceable contract had ever been formed.  While Cabrera was perfectly entitled to pursue these defenses with vigor, he cannot now pretend that the case was merely about the *amount* of commissions owed under the agreement.

The illegality defense Cabrera presented was the subject of repeated law and motion proceedings. It presented serious enough issues that the right to attach order Iguaçu obtained at the outset of the litigation was set aside.  The defense was eventually rejected on summary judgment.  Cabrera also defended through trial based on alleged ambiguities in the Finder's Agreement that he contended rendered it legally unenforceable.  While those issues were perhaps more typical of defenses that could appear in many breach of contract actions, Iguaçu's success in overcoming those challenges is relevant to the "comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions."  *Hsu*, 9 Cal. 4th at 876 (citation omitted).

Thus, this is not a case where plaintiff's only success lay in recovering some small fraction of the amount claimed.  Rather, Iguaçu was required to litigate the largely independent question of whether the Finder's Agreement was void for illegality, and it prevailed on that point.  It also defeated Cabrera's claim that no contract had ever arisen.  As such, this case falls somewhere in

between the "simple, unqualified victory" of *Hsu* that would unquestionably mandate a fee award, and the scenario in *Berkla*, which permitted a discretionary finding that the plaintiff was not a prevailing party.

Given the significance in this action of the legality issue, the party and Court resources devoted to it, and Iguaçu's victory on the point, it would be at the outer bounds of discretion, or quite possibly beyond them, to conclude that Iguaçu simply was not a "prevailing party" under § 1717. While it obtained judgment for only a fraction of the dollars it sought, the recovery was not *de minimus* and included complete victory on the important issue of whether the contract was legally void. Even assuming *Berkla* would *permit* a finding that Iguaçu is not entitled to fees, it does not compel such a conclusion. Accordingly, the Court finds that Iguaçu is "the party who recovered a greater relief in the action on the contract," and that it is therefore entitled to fee recovery as the "prevailing party."

B. Lodestar calculus

*1. Hourly Rates*

As noted, the "lodestar" is the product of the number of hours reasonably expended and the reasonable hourly rates. The fee applicant bears the burden of producing satisfactory evidence "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895, n.11 (1984). "Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Courts also may rely on decisions by other courts awarding similar rates for work in the same geographical area by attorneys with comparable levels of experience. *See*, *e.g.*, *Nadarajah v. Holder*, 569 F.3d 906, 917 (9th Cir.

2009). As a general rule, the forum district represents the relevant legal community. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).[2]

Cabrera raises no challenge to the hourly rates charged by any of the California attorneys that represented Iguaçu in this action, and the record is sufficient to support those rates. See Declarations of Popovic, Cross, and Yu. *See also*, *Gutowski v. McKesson Corp*., , 2013 WL 3242265, at *2-3 (N.D. Cal. June 25, 2013) (approving rate of $584; noting that according to a 2012 survey, "the average hourly billing rate for attorneys practicing in San Francisco was $622 and the average billing rate for partners with twenty years of experience was $602"); *Minor v. Christie's, Inc*., 2011 WL 902235, at *7 (N.D. Cal. Jan. 28, 2011) (approving rates of $600-$700 for partners in breach of contract action); *Santa Fe Pointe, L.P. v. Greystone Servicing Corp*., 2009 WL 3353449, at *2-3 (N.D. Cal. Oct. 16, 2009) (approving rate of $675 for partner in Jones Day's Los Angeles office with 20 years' experience; noting that a 2009 summary of hourly rates at nine California firms indicates that an attorney with 22 years' experience bills at an hourly rate of $650); *San Francisco Baykeeper v. West Bay Sanitary District* 2011 WL 3012936 at *7-9 (N.D. Cal. Dec. 1, 2011) (approving rates of $500 per hour for attorneys in practice for 14 years and $540 per hour for an attorney in practice for 18 years and rate of $300 per hour for attorney with two years' experience); *Armstrong v. Brown*, 805 F. Supp. 2d 918, 920 (N.D. Cal. Aug. 8, 2011) (awarding hourly rate of $275-$285 to second-year associates); *Rosenfeld v. U.S. Dep't of Justice*, 904 F. Supp. 2d 988, 1002, (N.D. Cal. 2012) (citing evidence that $225-395 is a reasonable range for first-year associates). Accordingly, the claimed hourly rates, which include discounts in some instances, of partners Neil Popovic ($625), Robert Cross ($550), and Constance Yu ($485) are deemed reasonable for purposes of the lodestar calculation. The rates of associate Ellen Liu ($295) and paralegal Jim Wade ($200) are also approved.

Iguaçu's showing as to the hourly rates charged by its attorneys in Brazil, however, is fatally defective. Whereas Iguaçu's opening brief includes a section entitled "prevailing rates," there is no

---

[2] Here, Iguaçu's claim includes fees for work performed in Brazil by its Brazilian counsel. There is no dispute that as to that portion of the claim, the relevant legal community is that of the Brazilian state of Minas Gerais, where the services were performed.

1 mention in that section whatsoever of the Brazilian timekeepers or the legal market in Minas Gerais.
2 The supporting declarations likewise are silent on the issue. On reply, Iguaçu attempts to address
3 other objections Cabrera made regarding the Brazilian fee claim, by providing additional
4 information regarding the experience and qualifications of the timekeepers, and explaining how the
5 matter was staffed for efficiency. The reply remains devoid, however, of any evidence regarding
6 prevailing market rates.

7 As noted above, Iguaçu bears the burden of producing satisfactory evidence "that the
8 requested rates are in line with those prevailing in the community for similar services by lawyers of
9 reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895, n.11. Iguaçu has
10 wholly failed to meet that burden here with respect to the portion of its fee claim representing
11 services performed by Brazilian counsel. Accordingly, there is no basis on which to award fees for
12 any of those services.[3]

### 2. *Hours expended*

15 The party seeking fees "bears the burden of establishing entitlement to an award and
16 documenting the appropriate hours expended[.]" *Hensley*, 461 U.S. at 437. After the moving party
17 provides evidence of the hours billed, the opposing party has the burden of submitting evidence
18 "challenging the accuracy and reasonableness of the hours charged or the facts asserted by the
19 prevailing party in its submitted affidavits." *Gates*, 987 F.2d at 1397-98 (citing *Blum* 465 U.S. at
20 892 n. 5. Even if the opposing party has not objected to the time billed, the district court "may not
21 uncritically accept a fee request," but is obligated to review the time billed and assess whether it is
22 reasonable in light of the work performed and the context of the case. *Common Cause v. Jones*, 235

---

[3] While this result may appear harsh at first blush, the financial consequence is relatively modest. The Brazilian fees constitute only approximately $113,000 of the $1.4 million claim. Of that, Iguaçu also failed to establish the propriety of recovering in this action fees its Brazilian attorneys incurred in defense of a related action in Brazil, which would have been excluded from the award in any event. Even assuming the claim were not further reduced for any of the other reasons advanced by Cabrera, it would also be subject to the overall reduction discussed in section C below. Accordingly, the net effect on the fee award of Iguaçu's failure to establish prevailing market rates in Brazil is not large.

F. Supp. 2d 1076, 1079 (C.D. Cal. 2002) (citing *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984)). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. A district court should also exclude from the lodestar fee calculation any hours that were not "reasonably expended," such as hours that are excessive, redundant, or otherwise unnecessary. *See id.* at 433–34.

Here, Cabrera challenges the reasonableness of the hours incurred by offering the declaration of Robert M. Bruning, as expert opinion on various facets of the fee claim and the underlying billing records. The propriety of that declaration is questionable. While it may be useful to some degree as a means of organizing and presenting the specific objections Cabrera has to the fee claim, it largely represents legal argument on questions that are for the Court to decide, rather than appropriate subjects for "expert opinion" *per se.* As such, there is merit to Iguaçu's complaint that the declaration effectively is an additional brief, offered in violation of page limits.[4]

Nevertheless, the objections presented by Cabrera both in its brief and in the Bruning declaration have been considered. Cabrera's objections relating to the *accuracy* of the time claim are not compelling. Although so-called "block-billing" may very well present the analytical challenges and risk of time inflation Cabrera points out, there is nothing to suggest that the practice here was egregious or resulted in any material inflation of the claim. Cabrera's contention that there may have been some instances of erroneous "double-billing" or similar issues likewise is not persuasive, in light of evidence that Iguaçu's counsel used appropriate billing judgment to pare down its fee claim prior to presenting its motion.

Cabrera's objections to the *reasonableness* of the time incurred in connection with various specific tasks, including allocation of work between attorneys with higher or lower billing rates, also do not warrant rejecting any of the hours claimed. Again, the record reflects that counsel used

---

[4] Bruning's testimony is based in part on a "propriety software program" he utilizes to "unscramble[] bills" and "allow[] for easy understanding of the amounts of time and charges associated with each of the tasks . . . ." While Bruning may be entitled to use such a tool to assist in his own evaluation of the documents, he has not laid a foundation that would permit the results of the software analysis to be presented directly as evidence. Additionally, it appears Bruning analyzed the underlying bills without thereafter taking into account reductions Iguaçu made prior to submitting its fee claim to the court.

billing judgment to provide significant and appropriate reductions from the original billings prior to presenting the fee claim.[5] More fundamentally, the time expended by Iguaçu's U.S. attorneys, in total or broken down by task, is not unreasonable for litigation of this scope and duration. Iguaçu met its burden in that regard, and nothing in Cabrera's opposition is sufficient to require a reduction to the basic amount, apart from the issue discussed in the following section. Accordingly, after deducting the unsupported claim of the Brazilian counsel, the unadjusted lodestar will be set at $1,355,169.[6]

### C. Adjustment for degree of success

Where a prevailing party achieves limited success, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley*, 461 U.S. at 436. In such circumstances, the court has discretion to lower the fee award. "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id*. In the wake of *Hensley*, the Ninth Circuit has instructed district courts to undertake a two-step process when adjusting fees to account for partial success:

> First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. If unrelated, the final fee award may not include time expended on the unsuccessful claims. If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." If the plaintiff obtained "excellent results," full compensation may be appropriate, but if only "partial or

---

[5] Some of Cabrera's objections also reflect an unduly narrow perspective on evaluating the reasonableness of time incurred. For example, Cabrera points to the brevity of the original complaint when criticizing the time incurred in preparing it. Length of such a document is rarely a good proxy for the amount of time that can be reasonably expended in creating it. Iguaçu has shown that the hours it incurred in all of the pre-filing tasks, including drafting the complaint, were reasonable.

[6] Iguaçu's U.S. counsel also incurred $14,821.04 in non-taxable costs, to which Cabrera has not objected and which appear appropriate. That amount will therefore be added to the award.

> limited success" was obtained, full compensation may be excessive. Such decisions are within the district court's discretion.

*Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986) (quoting *Hensley*, 461 U.S. at 434-35).

Under the first *Thorne* step, Iguaçu's successful and unsuccessful "claims" are related. "[R]elated claims involve a common core of facts or are based on related legal theories." *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003) (emphasis in original). Unrelated claims, by contrast, "will be 'distinctly different,' and based on different facts and legal theories." *Thorne*, 802 F.2d at 1141 (quoting *Hensley*, 461 U.S. at 434). Here, although the tens of millions in commissions Iguaçu failed to recover may have related to different projects and/or elements of potential recovery, the claims all arose from the Finder's Agreement and the basic contention that Cabrera owed commissions to Iguaçu on any of his dealings with Archer Daniels Midland. Accordingly there is no basis for simply eliminating from the lodestar hours expended on "unsuccessful claims." Instead, the award must be reduced across the board based on the undeniable fact that Iguaçu achieved only partial or limited success, such that full compensation would be excessive.[7]

As reflected in the discussion of "prevailing party" above, Iguaçu's success in this action was so limited as to call into question its entitlement to any fees at all. While it has been found to have prevailed within the meaning of § 1717, awarding the full lodestar amount simply cannot be

---

[7] In *Corder v. Gates*, 947 F.2d 374 (9th Cir. 1991) the court expressed a preference for reducing the hours claimed and the rate sought rather than adjusting the overall lodestar. *Id.* at 378 ("Since consideration of limited success is presumably subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate, district courts should not ordinarily make a separate adjustment for limited success.") (citation and quotation marks omitted). That said, an overall adjustment is permissible so long as the court "partition[s] its 'lodestar' analysis from consideration of . . . degree of success" and "account[s] for . . . limited success only once." *See id.* Here, the unadjusted lodestar does not account for plaintiff's limited success. Although the Brazilian counsel's hours were omitted from the lodestar calculation, those deductions were entirely unrelated to Iguaçu's degree of success. Accordingly, this separate lodestar adjustment raises no risk of double-counting. *See Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454, 1465 (9th Cir. 1988) cert. granted, judgment vacated, 490 U.S. 1087 (1989) and opinion reinstated, 886 F.2d 235 (9th Cir. 1989) ("Mathematically, it is inconsequential whether the lodestar figure itself is adjusted for lack of success or whether the reasonable hours component of the lodestar is adjusted for lack of success. What matters is that the district court did not 'count' for lack of success twice.").

justified on this record.[8]  "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (citing *Hensley*, 461 U.S. at 436).

As noted, there "is no precise rule or formula" for applying a reduction for limited success. Guided by its discretion and judgment based on familiarity with the long course of the litigation the Court must select a figure to provide compensation that is not excessive, and yet which does not undervalue the fact that Iguaçu successfully beat back a vigorous defense on difficult facts that could have resulted in no recovery at all.  While the dollar amount of the jury award paled in comparison to the demands, in essence it very much represented a virtual "tie" between the parties' competing positions.

As such, reducing the lodestar by 50% is eminently reasonable.  It echoes and preserves the balance struck by the jury.  It is not a compromise, but a reflection of the degree of success each party obtained.  While Iguaçu is the prevailing party under the fee-shifting statute, the fees reasonably incurred to obtain that limited success were $677,584.50.

## V.  CONCLUSION

Iguaçu's motion for attorney fees is granted, albeit in an amount less than that requested.  An amended judgment will enter to include a total award of $692,405.54, reflecting $677,584.50 in fees and $14,821.04 in non-taxable costs.

Dated: 7/23/14

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

---

[8] Cabrera urges the Court to consider a settlement offer he made prior to trial.  It is unnecessary to resolve the parties' disputes as to the admissibility of that information and as to whether it would even be relevant in light of purported limitations on the offer. Iguaçu's failure to obtain but a fraction of its claim, and the strong evidence that Cabrera would have paid a similar sum years ago had Iguaçu not insisted on pursuing the same additional claims the jury rejected, are more than sufficient to show the limited degree of Iguaçu's success at trial.